WILLIAM C. JOHNSON, Respondent, v. HARRY F. EWALD, Appellant.

St. Louis Court of Appeals, January 2, 1900.

1. **Action, Legal or Equitable**: REPORT OF REFEREE: PRACTICE, TRIAL: PRACTICE, APPELLATE. The findings of fact of the referee in an equitable action are like the special verdict of a jury in a chancery case, that is advisory only, to be received or rejected by the trial or appellate court according to its conceptions of the facts upon a consideration of the entire testimony. On the other hand, if the case is to be tried as one at law, then the findings of the referee as to the facts, must be sustained if supported by substantial evidence.

2. ———: ———: ———: PARTNERSHIP. Under the facts in the case at bar the plaintiff's action must be treated as one in equity for the settlement of partnership business.

3. ———: ———: ———: ACCOUNTS OF PARTNERSHIP: ACTION:
PRACTICE, TRIAL: PLEADING. The rule is that until the ac-
counts of a partnership are settled, and a balance struck, one partner
can not maintain an action at law against his co-partner upon a claim
growing out of the partnership.

Appeal from the St. Louis City Circuit Court.—*Hon.*
*Daniel D. Fisher,* Judge.

AFFIRMED.

*Clinton Rowell, J. H. Zumbalen* and *Carl Otto* for
appellant.

This being a proceeding for equitable relief, the
plaintiff can not recover at all, because he does not come in
the tribunal with clean hands. This is a proceeding asking
equitable relief. The controversy is between partners, and,
primarily one partner can not bring suit at law against his
co-partner. The co-partnership relation is only to be con-
sidered in a court of equity. There are a few instances where
one partner may sue another at law, but this does not come
within any of the exceptions. If the partnership business
had been entirely wound up and there was a definite agree-
ment as to the amount due, it might be settled in a court of
law. McKnight v. McCutchen, 27 Mo. 436; Leabo v.
Renshaw, 61 Mo. 292; Bambrick v. Simms, 132 Mo. 48.

*Frank Haskins* for respondent.

(1) This is an action which could be brought at law,
the reference was voluntary by consent of both parties; there-
fore, the finding of the referee is regarded as a special verdict
and can not be disturbed by the court if there is any evidence
to support it. Silver v. Railway, 5 Mo. App. 381; Buckner
v. Reis, 34 Mo. 357; Howard County v. Baker, 119 Mo. 397;
Bambrick v. Simms, 132 Mo. 48; Berthold v. O'Hara, 121

Mo. 88. (2) Even if it should be construed as an action in equity or for an accounting, if there is evidence to sustain the finding of the referee, and there is no clear showing of mistake, it should not be disturbed. Howard County v. Baker, 119 Mo. 397; Bank v. Big Muddy Iron Co., 97 Mo. 38. (3) Plaintiff was guilty of no fraud which would deprive him of a right of action against defendant. Pomeroy, Eq., sec. 400. (4) The burden of proof was on defendant to show that the division of profits was otherwise than an equal division. Encyclopedia Law [1 Ed.], vol. 17, p. 964. (5) Plaintiff proved by a preponderance of evidence the allegations of his petition.

BIGGS, J.—The plaintiff and defendant entered into an agreement to buy and sell a lot of machinery on joint account. The property was purchased and sold. The parties disagreed as to the division of the profits, and the present action was brought for an accounting. The property was bought for $22,500 which amount the defendant advanced. The agreement between the parties was oral. The plaintiff's understanding of the contract as stated in his petition, and which his evidence tended to prove, was to the effect that the defendant was first to be reimbursed for the purchase money; that he was also to receive the first $5,000 of profits, which the plaintiff guaranteed to him; that if the profits exceeded $5,000 and were less than $10,000, then the plaintiff was to receive the amount in excess of $5,000, and that if the profits should be more than $10,000, then after plaintiff and defendant had received each the sum of $5,000, the balance of profits was to be equally divided between the parties.

The defendant's version of the contract as set forth in his answer was as follows, to wit: "Defendant was to receive back first his original purchase price of $22,500, and thereafter, should the sales equal or be less than $27,500, in the aggregate, defendant was to receive of the money realized

therefrom $5,000 clear in addition to his purchase price of
$22,500, and plaintiff was to stand and pay all losses and
expenses of such sales up to the time that the sales should
reach $27,500, and should the sales be less than $27,500, in
addition to the foregoing losses and expenses, the plaintiff was
to make good and pay to defendant any and all deficiency be-
tween the purchase price and said $27,500.   Secondly, should
the sales be over the $27,500 and equal to or under $32,500,
then plaintiff was to receive all money realized from said sales
over $27,500 and up to or under $32,500, and up to the time
that said sales amounted to or were under $32,500, plaintiff
was to stand and pay all losses and expenses of such sales, and
defendant was to receive the said $27,500.   After the sales
reached $32,500, as aforesaid, all subsequent sales and profits
realized therefrom and all losses and expenses attendant upon
said subsequent sales were to be divided equally between
plaintiff and defendant."

The cause was referred.   The referee found that the
property was purchased in the name of defendant for $22,500,
which the defendant furnished; that the plaintiff was to adver-
tise and sell the property, the proceeds to be deposited with
the defendant; that the total amount of sales, including an
item of commissions received by plaintiff and hereinafter re-
ferred to, was $38,186.60; that the total expenses and losses
amounted to $2,508.85; that defendant received back his
purchase money and retained from the profits realized, the
sum of $5,000, and that plaintiff has drawn for himself
$5,640.38, all of which was done prior to the institution of
the suit.   These facts are not controverted.

It will be thus seen that the essential point of difference
between the parties was, whether it was agreed that the ex-
penses incurred up to the time the sales reached $32,500,
should be paid out of plaintiff's share of the profits.   Concern-
ing this question of fact the referee reported as follows:

"As to the essential point, the arrangement that ex-

penses should be paid out of Johnson's share, Ewald's testimony is very emphatic and precise, going into details of the conversation. But Johnson is as emphatic in his denial of that part of the alleged agreement and of the details related by Ewald.

"Both are credible men. The difficulty lies in the slipshod way of making a contract so important to the parties. I am fortunately not called on to explain just how the transaction occurred or may have occurred, but merely to determine whether the evidence establishes an agreement as Mr. Ewald claims. Considering the direct evidence of the parties to that conversation, as contradicting each other and dismissing, as not sufficient to turn the scale, considerations that may be urged as to the probability of such an agreement, I come to the conduct of the parties under the agreement, whatever it was.

"After the purchase, Johnson & Ewald agreed to have a fresh appraisement made by Livingston, then in the employ of Mr. Ball. When Johnson, with his bookkeeper, Gratiot, came to take Livingston up to the plant, Mr. Ball testified that he inquired who was to pay the expenses—with special reference to Livingston's time while making the appraisement, to which either Johnson or Livingston replied that Johnson did. Johnson denies any such utterance, admitting that he may have said that he would stand good for Livingston's compensation.

"Again, Livingston says that after the appraisement of the plant, he was of the party while Johnson and his bookkeeper, Gratiot, were discussing the issuance of descriptive circulars. According to Livingston, Johnson said to Gratiot something to this effect: 'We should get a folder descriptive of the machinery; it mustn't be very expensive, as I have to bear the expense.' Johnson and Gratiot deny this. The third instance cited by the plaintiff, an interview between himself

and Gratiot, is mentioned hereafter, in presenting the other side of the case.

"This business was carried out in the name of Johnson. Ewald was willing that Johnson should have the credit and advertising involved. Ewald received and paid out all moneys with the exception of petty cash at the plant. Johnson, at Ewald's suggestion, kept a separate book account for this business, which Ewald frequently examined. Gratiot was employed as bookkeeper at the plant. A few days after commencing business, Ewald and Gratiot had a conversation. Ewald testifies that he was led to speak to Gratiot by hearing Johnson make some remark ·to Gratiot in his (Ewald's) presence which might refer to some interest Gratiot was to have. According to Ewald, he (Ewald) explained the division of proceeds to Gratiot just as he had to Johnson, including the element of payment of expenses out of Johnson's profits. Gratiot emphatically denies that expenses were alluded to, but says Ewald stated the arrangement to be just what Johnson now claims.

"Ewald's own testimony throws further light on this conversation. Shortly thereafter Johnson humorously related to Ewald Gratiot's horror at the idea that Ewald was to have $5,000 profit before Johnson got anything. Even according to Ewald, nothing was said in this conversation with Johnson in reference to charging Johnson's profits with the expenses. Though Johnson and Ewald met in this business frequently, nothing appears to have been said as to distribution of profits between Ewald, Johnson or Gratiot, till about Christmas time, as hereinafter mentioned.

"In the meantime Johnson appears to have consulted Ewald, whenever any expense beyond routine was incurred. Stress, I think, should be laid on the way expenses were booked by Gratiot with Johnson's knowledge and consent, if not by his direction. If Johnson understood expenses came out of his profits, it would have been to his interest to

book all outlays, where there was a plausible excuse, under some other heading than expense. In this litigation, Johnson is claiming that 'expense' in the ledger contains about a dozen items aggregating several hundred dollars, which were not properly chargeable to that account."

Then follows a statement of several items of expense referred to, which need not be set forth here. The referee concluded his report as follows:

"I am satisfied beyond reasonable doubt that Johnson at no time prior to about Christmas, 1897, imagined that expenses came out of his profits. About Christmas, 1897, Ewald asked Gratiot at one of his visits to Ewald's office on business of this plant, whether the sales amounted as yet to $32,500. Gratiot's counter-query as to what importance attached to that figure, opened up the question of division of profits; and Ewald stated his view of the arrangement as he does in this case. Gratiot was evidently much astonished; and when he next had occasion to call on Ewald, a day or two later, had the claims re-stated to him.

"Gratiot doubtless told Johnson. After that time, as Ewald tells us, Gratiot was always present when the division was discussed, implying as doubtless was the case, that Johnson wanted a witness.

"As against this whole course of conduct, the admissions of liability for costs by Johnson in the two instances above cited are of little weight, even if we accept the utterances as given by defendant's witness. Each remark was made while referring to one special item of expense. The remarks, even if correctly given, amount to little when unsupported by other facts and contradicted by plaintiff's conduct.

"I think the preponderance of the evidence shows that Johnson did not agree with Ewald that the former should bear alone expenses until the gross sales reached $32,500. In this view of the facts, all questions as to burden of proof, or as to indulgence of technical presumption are eliminated.

"I submit that I find the contract between the parties of this suit, as to division of proceeds, to have been as follows: First to pay the expenses and to Ewald the purchase price, $22,500; next to Ewald $5,000; next to Johnson $5,000; any excess to be divided equally, and further specifically find, that it was not agreed that the expenses should be paid out of Johnson's share of the profits."

It was disclosed at the hearing before the referee that in the purchase of the machinery the plaintiff acted as the agent of the vendor and received a commission of $350 for his services. By consent the defendant amended his answer, claiming that in the statement of the account the commissions received by plaintiff should be treated as profits of the business, which was so allowed by the referee. The referee found the net profits to be $13,187.75; that plaintiff had received $5,640.38, leaving a balance due him from defendant of $953.49.

The defendant filed exceptions to the report of the referee, which the circuit court overruled. The report was approved, and a judgment entered in conformity with it. The defendant has appealed.

There is a question at the threshold of the case which we must first determine, that is the nature of the action, whether legal or equitable. If the latter, then the findings of the referee as to the facts are like the special verdict of a jury in a chancery case, that is advisory only, to be received or rejected by the trial or appellate court according to its conceptions of the facts upon a consideration of the entire testimony. Pendergast v. Eyermann, 16 Mo. App. 387; State ex rel. v. B. & L. Ass'n, 78 Mo. App. 104. On the other hand, if the case is to be treated as one at law, then the findings of the referee as to the facts, must be sustained if supported by substantial evidence.

The rule is that until the accounts of a partnership are settled, and a balance struck, one partner can not maintain

an action at law against his co-partner upon a claim growing out of the partnership. Some authorities hold that there must also be an express promise on the part of the debtor partner to pay the balance. The weight of authority, however, is against this. The books state some exceptions to the rule. Where there is but a single item to liquidate, the partnership being at an end, an action at law may be maintained by one partner against another. Buckner v. Ries, 34 Mo. 357. In the case cited Buckner was about to sell a hogshead of tobacco at auction. It was agreed between him and Ries that if the sale exceeded a certain sum Buckner would divide the excess with Ries, and that if the sale was less than the sum mentioned, Ries agreed to pay Buckner one-half of the deficit. The tobacco sold for less than the amount agreed on, and Buckner sued Ries at law to recover one-half of the deficit. The supreme court held that the action was properly brought. The chief reason why common law jurisdiction is ordinarily inadequate to a proper adjustment of a specific claim of one partner against another and growing out of the partnership is, that all charges and credits connected with the partnership business must be taken into consideration before it can be ascertained that one partner is justly indebted to his co-partner. In an ordinary business co-partnership this would present a multitude of issues which could not be properly tried and settled by a jury. Therefore in very early times courts of equity assumed jurisdiction in all matters of accounting between partners, unless the partners had agreed upon a settlement. In the Buckner case, *supra*, the complications or difficulties mentioned could not arise. There was but a single transaction, to wit, the sale of one hogshead of tobacco, and the amount due plaintiff on account of it was unquestioned. The doctrine of this case was invoked in Bambrick v. Simms, 132 Mo. 48. In that case the partnership was with respect to but one enterprise, to wit, the construction of six sections of a railroad, but as many business transactions grew out of the

work, the supreme court held that an adjustment of the partnership business could only be had in a court of equity. So in the present case the sale of the property (which was of large value) was by piecemeal, involving many separate transactions, and in which various items of expense were incurred. Therefore we think that plaintiff's action must be treated as one in equity for the settlement of the partnership business.

To obviate a statement and discussion by us of the evidence bearing on the terms of the copartnership, we have set forth herein that portion of the report of the referee on the subject, as we consider it a fair and full statement of the evidence adduced before him. While the evidence is conflicting and close as to the matters in issue, our examination has failed to convince us that the referee erred in his conclusions. It can not be said that his findings were the result of mistake (Mfg. Co. v. Iron Co., 97 Mo. 38), but on the contrary his report shows that he carefully considered and weighed the entire testimony, and his conclusions are satisfactory to us.

It was developed at the hearing before the referee that prior to the agreement between respondent and appellant, the owner of the machinery employed the former to sell it, and agreed to pay and did pay him a commission on the sale. He failed to disclose the fact of his agency to appellant. Counsel for appellant earnestly argue that by reason of this deception practiced by respondent the door of the court must be closed against him, invoking the equity rule that "he who comes into equity must come with clean hands." We think that counsel urge an erroneous application of the principle. The doctrine is commonly applied in actions for specific performance. If it appears in such a case that the complainant in obtaining the contract acted in bad faith or inequitably, the relief will be denied. Again, the principle will govern where a contract has been entered into to accomplish a fraudulent purpose. If such a contract is executory,

a court of equity will not enforce it. Neither will it decree
its cancellation if executed. The rule is also applied to
illegal contracts or transactions, where in contemplation of
law both parties are *in pari delicto.* The limitation of the
rule is thus stated by Mr. Pomeroy (1 Pom. Eq. Jur., sec.
399), to wit: "Broad as the principle is in its operation, it
must still be taken with reasonable limitations; it does not
apply to every unconscientious act or inequitable conduct on
the part of a plaintiff. The maxim, considered as a general
rule controlling the administration of equitable relief in par-
ticular controversies, is confined to misconduct in regard to,
or at all events connected with, the matter in litigation, so
that it has in some measure affected the equitable relations
subsisting between the two parties, and arising out of the
transaction; it does not extend to any misconduct, however
gross, which is unconnected with the matter in litigation, and
with which the opposite party has no concern. When a court
of equity is appealed to for relief it will not go outside of the
subject-matter of the controversy, and make its interference
to depend upon the character and conduct of the moving
party in no way affecting the equitable right which he asserts
against the defendant, or the relief which he demands." This
statement of the law in our opinion puts the case here within
the limitations of the rule, for the alleged inequitable conduct
of respondent in no manner affects the equitable rights which
he asserts against the appellant. The agency of the respond-
ent for the sale of the property antedated his agreement with
appellant, and the one had no connection whatever with the
other. Neither was it shown that the property could have
been bought for less money than was paid for it. Hence it
can not be said that the alleged contract of agency was di-
rectly connected with or in any manner affected the matter
in litigation, to wit, a division of the profits of the venture.
Besides the appellant claimed in his answer one-half of the
commissions received by respondent, and in the statement of

the account the referee acceded to his demand. This action on the part of appellant might well be held to be a waiver of all objections to the alleged misconduct of the respondent.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It is so ordered.